**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| REBECCA A. PEDERSEN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　Defendant. | NO. C09-1193-JLR-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Rebecca Pedersen appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

## I.　　FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a forty-one year old woman with a GED degree. Administrative Record ("AR") at 734. Her past work experience includes employment as a bartender, bookkeeper, cashier and deli worker. AR at 26. Plaintiff was last gainfully employed in February 2004.

REPORT AND RECOMMENDATION - 1

Plaintiff asserts that she is disabled due to psoriasis; obesity; dysthymia; anxiety related disorder; history of alcohol abuse; status post carpal tunnel release surgeries; status post bilateral foot surgeries with good results; and cervical spine issues. AR at 26. She asserts an onset date of August 1, 2003, and a protective filing date of April 4, 2005. AR at 24.

The Commissioner denied plaintiff's claim initially and on reconsideration. *Id.* Plaintiff requested a hearing, which took place on April 11, 2007. AR at 731-772. On June 26, 2007, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 24-39.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council on June 30, 2009, AR at 8-10, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.  EVALUATING DISABILITY

As the claimant, Ms. Pedersen bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.   DECISION BELOW

On June 20, 2007, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since April 4, 2005, the protective filing date of her application.

2. The claimant has the following severe impairments or combination of impairments: psoriasis; obesity; dysthymia; anxiety related disorder; history of alcohol abuse; status post carpal tunnel release surgeries; status post bilateral foot surgeries with good results; and cervical spine issues.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; sit for a total of about six hours in an eight hour workday; and stand/walk for a total of about six hours in an eight hour workday.  The claimant is able to use her hands for handling and fingering occasionally, and she is able to perform simple repetitive work that does not involve exposure to the public on a sustained or repetitive basis.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXX, 1965[2] and was thirty eight years old, which is defined as a younger individual age 18-44, on the date the application was protectively filed.

7. The claimant has at least a high school education and is able to communicate in English.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR 20 Part 404, Subpart P, Appendix 2)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 4, 2005, the date the application was filed.

AR at 26-38.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ Err in his credibility assessment of plaintiff's claims of limitations caused by her hand pain?

2. Did the ALJ err in his credibility assessment of plaintiff's claims of limitations on standing and walking?

3. Did the ALJ err in finding the plaintiff could perform the job of bakery worker?

Dkt. No.15 at 6, 12, 17.

## VII.   DISCUSSION

A. <u>The ALJ Did Not Err in His Credibility Assess of Plaintiff's Claims of Limitations Caused By Her Hand Pain</u>

Plaintiff argues that the ALJ erred by failing to find plaintiff completely credible as she discussed her hand limitations imposed by her carpal tunnel syndrome surgeries. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p (1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b),

REPORT AND RECOMMENDATION - 6

416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, plaintiff claims the ALJ rested his adverse credibility assessment only on the failure to provide sufficient objective medical evidence of the degree of her pain and limitation.  Dkt. No. 15 at 8.  This is not accurate.  The ALJ did point out that plaintiff's claims of her limitations were not supported by the EMG testing he had that showed at most mild/limited abnormalities or by x-rays showing "mild" degenerative changes.  He also assessed the objective medical evidence as "weak."  AR at 34.  However, the ALJ also pointed to activities of daily living that would not be consistent with the limitations as described.  He noted plaintiff "has been able at times to prepare meals, shop, do some housework, groom herself, use the computer, and pay bills, which indicate some ability to use her hands for tasks."  AR at 34.  Minimal objective medical findings, can, when other reasons are present, undermine plaintiff's credibility.  *Burch v. Barnhart*, 400 F.3rd 676, 680-81 (9th Cir. 2005)

REPORT AND RECOMMENDATION - 7

Plaintiff argues that incidents of daily activity can support an adverse credibility determination if they are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). This is accurate as a general proposition, but it is not applied. Here, the ALJ specifically cited daily activities involving plaintiff's use of her hands that would permit her to use her hands in the workplace.

The role of this Court is limited. As noted above, the ALJ is responsible for making credibility determinations, which will not be upset unless not supported by substantial evidence as that term has been defined. The ALJ did not err in his credibility assessment of plaintiff's claims of limitations regarding use of her hands.

B. <u>The ALJ Erred In His Credibility Assessment Regarding Plaintiff's Claims of Limitations On Walking and Standing</u>

Plaintiff suffers from intractable plantar keratosis ("IPK"). At the hearing, she testified she had five surgeries on her left foot and one on her right foot to deal with the IPK. AR at 744-45. She had multiple foot surgeries prior to her alleged onset date, and has had debridements for recurring keratosis since that time, including a debridement in August 2006. AR at 27. The ALJ noted that plaintiff claimed her foot problems were:

> worse with standing and walking. She reported a history of foot surgeries, with one right foot surgery and five left foot surgeries related to painful intractable keratosis. The claimant stated that she gets spots on the bottom of both feet that hurt when she walks. When this happens she walks on the edges of her feet, which throws off her back. The claimant estimated that she can stand for about fifteen minutes at a time but only three minutes at a time just prior to debridement of keratosis.

AR at 32.

In finding plaintiff not credible, the ALJ concluded:

> The claimant has had foot problems for many years with multiple surgeries prior to the alleged onset date. She also has had recurring plantar keratosis for many years, but treatment records show infrequent debridement procedures for this condition even though debridement is noted to resolve her pain. It appears that the plaintiff had two debridement procedures in 2006, one in 2005, and two in 2004. The claimant testified that she can stand/walk for only fifteen minutes

REPORT AND RECOMMENDATION - 8

> at a time due to intractable plantar keratosis, and it is noted in 2002 Dr. Cutler indicated his support for retraining to a job that did not require extended weight bearing duties. However, the claimant was able to work as a cashier for at least six or seven months from about August 2003 to February 2004, which involved standing for over six hour a day. As noted above, she stopped working due to hand symptoms. Although the claimant may experience some pain standing and walking with a recurrence of plantar keratosis, the record shows that her pain is temporary and is resolved with debridement.

AR at 33-4 (record citations omitted).

In 2002, Dr. Cutler, who was tending to plaintiff wrote an assessment of the impact of plaintiff's foot problems on her ability to work. "I have cared for Rebecca over the past decade for recurrent painful foot problems. She has undergone several surgeries in an attempt to resolve these problems. *Due to the recurrent nature of her foot problems, chronic foot pain and disabilities,* I support her receiving job retraining for employment in a field that does not require extended weight bearing standing or walking duties." AR at 422 (emphasis added).

The ALJ erred with his non-credibility finding regarding plaintiff's difficulties regarding standing or walking. Although plaintiff did work as a cashier from August 2003 until February 2004, she reported she did not become "unable to work" due to her conditions until February 2004, and that one of the reasons she could not work was because of "standing on my feet." AR at 104. Thus, there is no inconsistency. In addition, although the debridement procedures did result in much improvement in her pain levels immediately following the procedure, the inference that these procedures resolved the pain problem is belied by the substantial number of surgeries, debridement procedures, and Dr. Cutler's comment that the problems were recurrent and chronic. Moreover, the ALJ cited no types of daily activities engaged in by plaintiff that would be inconsistent with the limitations claimed by plaintiff regarding standing or walking.

As a final note, it appears that the Commissioner concedes the ALJ erred in this regard, as the Commissioner does not even discuss this specific issue in his memorandum. The ALJ erred and this case must be reversed.

### C. The ALJ Erred At Step 5

At step 5 of the disability evaluation process, the ALJ concluded that he could not rely upon the Medical-Vocational Guidelines to determine whether plaintiff was disabled, because she could not perform a full range of light work, given her additional limitations. AR at 38. Accordingly, he called a Vocational Expert ("VE") to testify. The ALJ then found, based on the VE's testimony, that plaintiff could perform the work of a "bakery worker," and concluded she was not disabled.

The ALJ erred. The VE testified that a bakery worker required the worker to be on her feet "all day." AR at 766. This meant that a bakery worker job would have two 10-minute breaks and a 30 minute lunch, which is only 50 minutes of break time in an 8 hour work day. AR at 768.

The finding that plaintiff could perform as a bakery worker cannot be sustained for two reasons. First, as set forth in the preceding section, it is questionable whether plaintiff could be on her feet for the entire day. This can only take place if the ALJ's adverse credibility assessment is upheld, which is not the case. Second, even if the adverse credibility determination were to be upheld, the RFC found by the ALJ included a standing/walking limitation of six-hours a day. According to the VE, a bakery worker is on her feet in excess of 7 hours, which is beyond her six hour capacity. The ALJ erred in finding plaintiff could work as a bakery worker, and using this finding to conclude that she was not disabled.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. On remand, the Commissioner should be directed to reassess the medical evidence regarding plaintiff's limitations regarding her ability to stand and walk, to reassess her credibility, and to call a VE to testify about her ability to perform a job that includes all of plaintiff's limitations.

1   A proposed order accompanies this Report and Recommendation.

2   DATED this 12th day of May, 2010.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11